


**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*

**United States Bankruptcy Judge**

**Signed May 09, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| DAVID WRIGHT and | § | CASE NO. 09-30499-SGJ-7 |
| JESSIE YOUNG WRIGHT, | § | |
|    DEBTORS. | § | |
| | § | |
| | § | |
| DAVID WRIGHT, | § | |
|    PLAINTIFF, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 11-03137 |
| | § | |
| PARKLAND HEALTH AND | § | |
| HOSPITAL SYSTEM, | § | |
|    DEFENDANT. | § | |

**MEMORANDUM OPINION AND ORDER REGARDING**
**VARIOUS DISCOVERY-RELATED MOTIONS**
**[DOC. NOS. 13, 14, 15, AND 16]**

*I. INTRODUCTION: WHY ARE WE HERE?*

    This Memorandum Opinion and Order pertains to a discovery dispute within an adversary proceeding. Yet there is so much more at issue, beneath the surface. The adversary proceeding itself is baffling to the court, and makes the court wonder "why

are we here?" It makes the court philosophically ponder how often it is that an individual, consumer debtor—who receives the end-goal of bankruptcy, *i.e.,* the discharge of Section 524 of the Bankruptcy Code—feels truly benefitted by his walk through the bankruptcy system? How often are such debtors enjoying the metaphorical "fresh start," unburdened by their past, that we imagine our bankruptcy system affords to them? How often do the debtors' troubles simply continue?

*II.  FIRST, THE DISCOVERY DISPUTE.*

Before this court are the following discovery-related motions: (1) the Motion of the Defendant Parkland Health and Hospital System ("Defendant-Parkland"), to Stay Discovery [Doc. No. 13]; (2) the Motion of Defendant-Parkland for an Expedited Hearing on the aforementioned motion [Doc. No. 14]; (3) the Motion of Defendant-Parkland to Extend the Deadline to Respond to the Plaintiff's Discovery Requests [Doc. No. 15]; and (4) another Motion of Defendant-Parkland for an Expedited Hearing on the aforementioned motion to extend [Doc. No. 16]. In short, the Defendant-Parkland wants a respite from discovery activity, until this court hears Defendant-Parkland's Rule 12(b)(6) motion to dismiss the underlying adversary proceeding that has been filed against Defendant-Parkland.

*III. THE ADVERSARY PROCEEDING THAT MAKES THE COURT ASK "WHY ARE WE HERE"?*

The context of this discovery dispute is important to note. The discovery dispute arises in an adversary proceeding filed by

a former Chapter 7 Debtor ("Plaintiff" or "Mr. Wright"), who, along with his wife, received a discharge of their debts on April 29, 2009 (in what turned out to be a no-asset bankruptcy case). The current adversary proceeding was filed by Mr. Wright after Mr. Wright first moved to re-open his bankruptcy case (almost two-years after his discharge) to enforce his discharge order. Specifically, Mr. Wright now seeks in this adversary proceeding to enjoin Defendant-Parkland for its alleged violation of the Plaintiff's discharge order, through Defendant-Parkland's ongoing attempts at collection on what Plaintiff believes to be prepetition, discharged debts for medical treatment (one in the amount of $1,090 and one in the amount of $3,480),[1] through Defendant-Parkland's phone calls and multiple letters (copies of four post-discharge demands for payment were attached to Plaintiff's complaint).  Defendant-Parkland has allegedly ignored numerous letters from Plaintiff's counsel advising Defendant-Parkland of the bankruptcy discharge (copies of two such letters have been filed in the adversary proceeding).  It is alleged that Defendant-Parkland has reported erroneous information to credit bureaus regarding these debts (*i.e.,* that Plaintiff remains personally liable on them), and that Defendant-Parkland, by the way, has a pattern of doing this to other debtors.  The Plaintiff

---

[1] The $1,090 debt allegedly relates to medical services provided to Mr. Wright on November 20, 2008.  The $3,480 debt allegedly relates to medical services provided to Mr. Wright on November 14, 2008.

**MEMORANDUM OPINION AND ORDER REGARDING DISCOVERY-RELATED MOTIONS**    **Page 3**

4383128-1/07863.20

is also seeking monetary damages[2] at this point from Defendant-Parkland.[3]

The court takes judicial notice that the Debtors filed sworn bankruptcy schedules in their bankruptcy case indicating that they are retired, disabled, and live solely on social security benefits of $2,697 per month. [Doc. No. 1, from main bankruptcy case].

*IV. DEFENDANT-PARKLAND'S MOTION TO DISMISS THE ADVERSARY PROCEEDING.*

It is unclear, at this juncture, whether there are really many disputed facts involved in the underlying adversary proceeding.

As earlier mentioned, Defendant-Parkland has brought a Rule 12(b)(6) motion to dismiss the adversary proceeding. Defendant-Parkland argues therein that this bankruptcy court lacks subject matter jurisdiction over this adversary proceeding, in that Defendant-Parkland is a political subdivision of the State of

---

[2] Plaintiff seeks actual damages of not less than $10,000; punitive damages of not less than $10,000; additional statutory damages under the Texas Debt Collection Act (of $1,000 per violation of that act) and reimbursement of attorneys fees and expenses.

[3] The court believes it is important to note that, all too often, the court sees complaints for damages for stay violations or discharge violations that are a bit overblown and exaggerated (*i.e.,* asking for large damages) when it appears that, perhaps, a simple misunderstanding occurred that could have been resolved with a phone call or letter or two. Sometimes a debtor or former-debtor (and/or more likely his attorney) will turn a somewhat innocent or forgivable stay/discharge violation into a cause célèbre. So far, the record in this adversary proceeding (*i.e.,* the Complaint) does not seem to fall into such a category. In fact, as will be explained in the next section, the court fears it is the Defendant-Parkland which is turning this into a cause célèbre.

Texas and has ***sovereign immunity***, under the Eleventh Amendment of the United States Constitution and the laws of the State of Texas, and Defendant-Parkland has not waived its sovereign immunity.[4] Defendant-Parkland argues that any attempt by Congress to abrogate that sovereign immunity in Section 106(a) of the Bankruptcy Code was unconstitutional (citing *Murphy v. Mich. Guar. Agency (In re Murphy)*, 271 F.3d 629 (5th Cir. 2001), *Dep't of Transp. & Dev. v. PNL Asset Mgmt. (In re Estate of Fernandez)*, 123 F.3d 241 (5th Cir. 1997), and *State of Texas v. Soileau (In re Soileau)*, 488 F.3d 302 (5th Cir. 2007), *cert. denied,* 552 U.S. 1180 (2007)). Surprisingly, Defendant-Parkland does ***not*** mention the hugely significant decision of the United States Supreme Court in *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006). In *Katz*, which involved a preference claim/cause of action, filed by a bankruptcy trustee against an arm or agency of a State government, the Supreme Court held, essentially, that the individual States gave Congress "the power to subordinate state sovereignty, albeit within a limited sphere," when they ratified the Bankruptcy Clause in the United States Constitution; Congress's authority to enact bankruptcy legislation that treats States the same way as other creditors "arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the [Constitutional] Convention, not by

---

[4] The specific argument is that the Eleventh Amendment generally bars suits against States and state entities in federal courts regardless of the nature of the suit.

statute [*i.e.,* not by Section 106]." *Katz,* 546 U.S. at 377 & 379. This cessation of immunity appears to extend to *in rem* bankruptcy proceedings and ancillary proceedings "necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* at 378.

    Defendant-Parkland argues secondarily that it never received notice of the Plaintiff's bankruptcy case (suggesting that this lack of notice, automatically, means that Defendant-Parkland's claim was ***not*** discharged). Defendant-Parkland does not mention the complexities of Section 523(a)(3)(A) and (B) of the Bankruptcy Code, and how Defendant-Parkland's actual knowledge and/or lack of having a claim that would have been excepted from discharge, may be a factor here.

    With regard to the latter argument, the Plaintiff has represented that the debts that Defendant-Parkland is attempting to collect were, indeed, listed on the Debtors' Schedule F and that Defendant-Parkland, indeed, received notice of the bankruptcy case. The court takes judicial notice that there are debts listed as owing to "Pacificare" and "UT Southwestern Medical" (from November 2008—the same alleged dates of service) that are ***similar*** in amount to what Defendant-Parkland is now attempting to collect from the Plaintiff, but ***Defendant-Parkland itself*** was not listed in the Debtors' Schedules or mailing matrix. The court cannot help but suspect that the debts shown owed to "Pacificare" and/or "UT Southwestern Medical," in Mr.

Wright's Bankruptcy Schedules, are one-and-the-same as the debts being alleged now by Defendant-Parkland. The court cannot help but wonder if this is really all as complicated as the extensive briefing and vociferous arguments might suggest.

In any event, with the discovery-related motions, Defendant-Parkland argues that it should not be burdened with answering certain discovery that the Plaintiff has propounded (which is due on or around May 9, 2011) until the court rules on Defendant-Parkland's motion to dismiss (which is set for hearing May 31, 2011). Defendant-Parkland asked for an expedited hearing on this discovery dispute. Apparently, the Plaintiff was unwilling to extend the response deadline on its discovery.

*V. RULING.*

The court will rule on the discovery-related motions without a hearing, since the court does not believe oral argument would aid in this discovery-dispute (and since the court has few options for scheduling a hearing prior to the May 31, 2011 hearing on Defendant-Parkland's motion to dismiss). Moreover, the court does not believe that the situation described above warrants emergency court time. Accordingly, it is

**ORDERED** that Defendant-Parkland's discovery-related motions [Doc. Nos. 13 & 15] are granted and discovery (except as otherwise agreed to by the parties) shall be stayed until after the court's ruling on Defendant-Parkland's Motion to Dismiss.

**IT IS FURTHER ORDERED** that Defendant-Parkland shall file a

supplemental brief, before the hearing on the Motion to Dismiss, explaining: (a) what its position is, on the relevance of the Supreme Court's *Katz* decision, as to Defendant-Parkland's sovereign immunity arguments; and (b) why Defendant-Parkland did not perceive a need to cite the *Katz* case to the court in its Motion to Dismiss (and Amended Motion to Dismiss).

**IT IS FURTHER ORDERED** that Defendant-Parkland shall also address, in its supplemental brief mentioned in the preceding paragraph, the significance and/or applicability of Section 523(a)(3) of the Bankruptcy Code, and case law construing it, with regard to Defendant-Parkland's position that its prepetition claims against the Plaintiff could not have been discharged because it was allegedly not scheduled on the Plaintiff's creditor's list in his no-asset case.

**IT IS FURTHER ORDERED** that Defendant-Parkland shall be prepared to address, on May 31, 2011, the court's fundamental question of "why are we here?" While this court has an open mind as to future evidence it might hear, it seems obvious, from a cursory review of the record in this case, that we are most assuredly dealing with discharged debt. It appears that some other healthcare provider/insurer/entity in the "mix"—in connection with healthcare services provided to the Plaintiff in November 2008 (*i.e.,* Pacificare, UT Southwestern)—may have been listed as the actual "creditor" in the Debtor's case. Did actual notice of the Plaintiff's bankruptcy trickle into the hands of

Defendant-Parkland? Time will tell. But the fact is, the Plaintiff received a discharge of all of his general unsecured debts in 2009. His case was a no-asset case. It appears from the record that there was no fraud or problematic conduct alleged by any party in the Debtors' bankruptcy case. The Debtors are retired, disabled, and living on social security. Why is Defendant-Parkland attempting to collect on what appears to be less than a $5,000 debt (which was most likely discharged)? Why is Defendant-Parkland paying lawyers to make Constitutional arguments of sovereign immunity in a case like this?

The court is sure that there will be good arguments and explanations at the hearing on May 31, 2011. In fact, the court sincerely hopes so. Meanwhile, settlement negotiations are encouraged.

It is so **Ordered.**

###END OF ORDER###